# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| HANK DRAGER, individually and on Behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:10-cv-7585 |
| v. | ) ) | Judge Robert M. Dow, Jr. |
| BRIDGEVIEW BANK and MEIRTRAN, INC., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Bridgeview Bank's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) [6]; Plaintiff's motion to strike portions of Defendant Bridgeview Bank's answer and affirmative defenses [13]; and Plaintiff's motion for discovery [17]. For the following reasons, Defendant Bridgeview Bank's motion [6] is respectfully denied. Plaintiff's motion to strike [13] is granted in part and denied in part and Plaintiff's motion for discovery [17] is denied.

**I.     Background**

    **A.     Facts in Plaintiff's Amended Complaint**[1]

In his one-count complaint [10], Plaintiff alleges a violation of the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1963 *et seq.* and Regulation E, 12 C.F.R. § 205.1 *et seq.* Plaintiff alleges that on November 1, 2010, he used an automated teller machine ("ATM") located at 4753 N. Broadway Avenue, in Chicago to withdraw $20 from his bank account. The

---

[1] For purposes of Defendant's motion, the Court assumes as true all well-pleaded allegations set forth in the complaint. See, e.g., *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). Unless otherwise specified, the source of all facts in this section is Plaintiff's operative complaint [10].

1

ATM charged a $3.00 fee during the transaction, which was paid to Defendant Bridgeview Bank. Plaintiff alleges that as of November 1, 2010, there was no fee notice posted on or near the ATM that disclosed that users would be charged a fee for using the ATM. Plaintiff alleges that Defendant Bridgeview Bank ("Bridgeview") "maintains the Subject ATM and, therefore, is an ATM operator" (¶ 13) and that Defendant Meirtran ("Meirtran") was the owner and operator of the subject ATM. Plaintiff brings this action on behalf of himself and "all persons who were charged a transaction fee for the use of" the subject ATM.

### B. Facts in Defendant's Answer

Bridgeview has answered the complaint [5].[2] In the answer, Bridgeview denies that it owns the subject ATM. (Ans. at ¶ 11). Further, Bridgeview asserts four affirmative defenses along with facts common to those defenses.

Plaintiff alleges that the subject ATM was installed on April 3, 2006 by Meirtran and that Meirtran, not Bridgeview, owns the ATM. (*Id*. at ¶¶ 2-3). The answer alleges that on November 26, 2006, Meirtran took a picture of the subject ATM showing that a notice was on the face of the ATM that told users that a fee would be charged for particular transactions. Bridgeview alleges that "[t]o the extent that any Meirtran employee were to see that any of its ATMs, including the Subject ATM, did not have a notice on it when it replenished that ATM, it would make notification of that fact, and have it immediately replaced." (*Id*. at ¶ 7). In early 2009, the

---

[2] Plaintiff filed his complaint [1] on November 24, 2010. Bridgeview answered and filed the instant motion for judgment on the pleadings on December 15, 2010 [5, 6]. On December 22, 2010, the Court granted Plaintiff leave to file an amended complaint, which Plaintiff did on December 30, 2010. The amended complaint [10] is materially identical to the original complaint with the exception of Meirtran, Inc. being added as a Defendant and the addition of certain allegations pertaining to Meitran. Both Defendants are represented by the same counsel. In its reply ([24] at 1 n.1), Bridgeview clarifies that it is standing on the papers that it filed in opposition to the original complaint, and asks that those argument be applied to the amended complaint. Further, Bridgeview clarifies that its defense is the same that Meitran would make, so if the Court grants judgment for Bridgeview, it should grant judgment in favor of Meitran as well.

fee notice was moved to below the tray where money is removed. On April 29, 2009, Meirtran took a picture of the Subject ATM showing the notice in that location. Further, as of April 29, 2009, there was an additional notice at the top of the machine that read "Bridgeview Bank Customers Use This ATM For Free." Defendants allege that "[i]f no fee notice was on the Subject ATM on November 1, 2010, then it was removed between April 29, 2009 and November 1, 2010." (*Id*. at ¶ 7).

Defendants attach an affidavit from Mike Boyd (Meirtran's president) as Exhibit 1 to their answer and counterclaims, which is intended to provide support for the above facts. The affidavit adds a few statements that are not found in the text of the counterclaims. For instance, Boyd swears that "[i]f no fee notice was on the Subject ATM on November 1, 2010 then it was removed between April 29, 2009 and November 1, 2010 by someone other than Meitran." (Boyd Aff. at ¶ 15).

## II.   Legal Standard For Rule 12(c) Motions

A Rule 12(c) motion for judgment on the pleadings permits a party to move for judgment after both the plaintiff's complaint and the defendant's answer have been filed. Fed. R. Civ. P. 12(c). Rule 12(c) motions are reviewed under the same standard as Rule 12(b)(6) motions to dismiss. *Piscotta v. Old Nat'l Bancorp,* 499 F.3d 629, 633 (7th Cir. 2007).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555, 569 n.14). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 562.

The court, in ruling on a motion for judgment on the pleadings, must "accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Forseth v. Village of Sussex,* 199 F.3d 363, 364 (7th Cir. 2000). "Thus to succeed, the moving party must demonstrate that there are no material issues of fact to be resolved." *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend,* 163 F.3d 449, 452 (7th Cir. 1998). Courts "view the facts in the complaint in the light most favorable to the nonmoving party." *Id.* (quoting *GATX Leasing Corp. v. National Union Fire Ins. Co.,* 64 F.3d 1112, 1114 (7th Cir. 1995)). "The main difference between a Rule 12(b) motion and a Rule 12(c) motion is that a Rule 12(b) motion may be filed before the answer to the complaint is filed, whereas, a Rule 12(c) motion may be filed "after the pleadings are closed but within such time as not to delay the trial." *Id.* at 452 n.3.

A court decides a motion for judgment on the pleadings under Rule 12(c) based upon a review of the pleadings alone. *Northern Indiana Gun & Outdoor Shows, Inc.,* 163 F.3d at 452. The pleadings include the complaint, the answer, and any written instruments attached as exhibits, such as affidavits, letters, contracts, and loan documentation. *Id.* at 452-53; see also *Arethas v. S/TEC Group, Inc.*, 2005 WL 991782, at *6 (N.D. Ill. 2005) ("although in ruling on a

motion for judgment on the pleadings a court can consider affidavits attached to a complaint or an answer to the complaint, a court cannot consider affidavits that are not a part of the pleadings"). If the court considers matters outside the pleadings, the court should convert the motion for judgment on the pleadings into a motion for summary judgment. *Id*. at 453 n.5; see Fed. R. Civ. Proc. 12(d).

### III. Plaintiff's Motion to Strike

Plaintiff has filed a motion to strike Exhibit 1 to Defendant's Affirmative Defenses in its entirety, and failing that, has asked the Court to strike ¶¶ 10, 11, 14, and 15 in that Exhibit. Plaintiff also asks the Court to strike Defendant's third and fourth affirmative defenses. Federal Rule of Civil Procedure 12(f) permits a court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Motions to strike are generally disfavored, because they potentially serve only to delay litigation. *ABN AMRO, Inc. v. Capital Intern. Ltd.,* 2007 WL 845046, at *3 (N.D. Ill. March 16, 2007) (citing *Heller Fin., Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1294 (7th Cir. 1989)). A district court has broad discretion to grant or deny a motion to strike. *Id.* (citing *Talbot v. Robert Matthews Distrib. Co.,* 961 F.2d 654, 664–65 (7th Cir. 1992)).

First, Plaintiff asks the Court to strike the Boyd affidavit because it is "an attempt for * * * [the] president of Meirtran, to introduce self-serving, conclusory statements as evidence in support of Defendant's Rule 12(c) motion." (Mot. to Strike [13] at 2). Plaintiff argues that the Boyd affidavit improperly attempts to introduce facts "outside the pleadings" and accordingly Defendant's motion must be treated as one for summary judgment under Federal Rule of Civil Procedure 56. (Pl. Reply Mot. Strike [25] at 3).

5

As discussed above, a Court ruling on a motion filed pursuant to Rule 12(c) must consider "the pleadings alone," which includes any affidavit that a defendant attaches to an answer. *Northern Indiana Gun & Outdoor Shows, Inc.,* 163 F.3d 449, 452 & n.4 (7th Cir. 1998). Accordingly, under Seventh Circuit law, the Court can consider the Boyd affidavit without converting Defendant's motion into a Rule 56 motion for summary judgment. *Id.* at n.5 (citing *Dempsey v. Atchison, Topeka and Santa Fe Ry. Co.,* 16 F.3d 832, 835-36 (7th Cir. 1994)); see also *Langone v. Miller*, 631 F. Supp. 2d 1067, 1070 (N.D. Ill. 2009) ("'Written instrument' is construed broadly to include such things as affidavits, letters, contracts, and loan documents").[3]

Next, Plaintiff argues that the affidavit should be stricken because it is an "unsworn declaration" that fails to comply with 28 U.S.C. § 1746. That statute provides as follows:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
>
> > (1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on
> > (date). (Signature)".
> >
> > (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on
> > (date). (Signature)".

---

[3] As the Seventh Circuit noted in *Northern Illinois Gun & Outdoor Shows*, in other jurisdictions, the Court would not be permitted to consider the Boyd affidavit without converting Defendants' motion into a motion for summary judgment. See *Rose v. Bartle*, 871 F.2d 331, 339-40 n.3 (3d Cir. 1989). Because *Northern Indiana Gun & Outdoor Shows* is on-point, it is controlling in regard to the materials that the Court may consider at this stage of the case.

Plaintiff argues that Defendant's exhibit 1 is "unsworn" because it ends only with the words "FURTHER AFFIANT SAYETH NOT." Defendant argues that because it was notarized and was "subscribed and sworn" before the notary, the affidavit does not need to meet the requirements of § 1746.

The Seventh Circuit teaches that in order for a document to be a "sworn" affidavit, the document must be "a statement reduced to writing and the truth of which is sworn to before someone who is authorized to administer an oath." *Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985); see also *Owens v. Hinsley*, 2011 WL 923303, at *3 (7th Cir. March 18, 2011). Here, Defendant's Exhibit 1 is signed by Boyd and states on its face that it was "subscribed and sworn" before a notary public on December 15, 2010, and contains the notary's signature and official seal. The opening words of the affidavit state that Boyd does "hereby swear and affirm under oath as follows * * *." Under these circumstances, the additional language provided for in § 1746 is not required.[4]

Next, Plaintiff moves to strike a number of specific statements in the Boyd affidavit—namely ¶¶ 10, 11, 14, and 15. Paragraph 10 of the affidavit states "[t]o the extent that any Meitran employee were to see that any of its ATMs, including the Subject ATM, did not have a

---

[4] The affidavit does not indicate that Boyd is signing "under penalty of perjury." The Court notes that the plain language of § 1746 does not require the affidavit to so state if it is "sworn." (Above, the Court explained why Defendant's Exhibit 1 meets that requirement). However, Plaintiff cites a number of cases for the proposition that the words "under penalty of perjury" are required to render an affidavit admissible. In *Flowers v. Abex Corp.*, 580 F. Supp. 1230, 1233 n.2 (N.D. Ill. 1984), the court noted that "[m]erely notarizing the signature does not transform a letter into an affidavit." Similarly, in *Nissho-Iwai American Corp. v. Kline*, 845 F.2d 1300, 1305-06 (5th Cir. 1988), the Fifth Circuit cited *Flowers* for the proposition that a purported affidavit was inadmissible. In *Nissho-Iwai*, the document was not made under penalty of perjury, and although it was notarized, the notary only swore that "on this day personally appeared Mrs. Rukmini Sukarno Kline, known to me to be the person whose name is subscribed to the foregoing Affidavit, and acknowledged to me that she executed the same for the purposes and consideration therein expressed." *Id*. at 1306 n.6. Both cases stand for the unobjectionable proposition that having a notary attest to the fact that the maker signed the document is not sufficient to render a document "sworn" and therefore admissible. However here, the face of Exhibit 1 states that it was "subscribed and sworn" before the notary—a key fact missing in both *Flowers* and *Nissho-Iwai*.

notice on it when it replenished that ATM, it would make a notification of that fact, and have it immediately replaced." Plaintiff argues that that ¶ 10 is intended to establish that Meirtran had a system in place reasonably calculated to ensure compliance" with the EFTA, but that the paragraph "sets forth no facts except a conclusory statement it had such a system." (Mot. to Strike at 3). The Court declines to strike this statement on the grounds that it is "conclusory." Boyd testifies in his affidavit that he is the president of Meitran. With this fact in mind, it is reasonable for the Court to infer, see *Davis v. City of Chicago*, 841 F.2d 186, 189 (7th Cir. 1988), that Boyd is in a position to personally know the content of Meitran's policies regarding its ATMs. See *Brandon v. Maywood*, 157 F. Supp. 2d 917, 932 (N.D. Ill. 2001) (holding that because the affiant was the policymaker for defendant, facts about the defendant's policies were "within his personal knowledge, and are not unsupported conclusions"). The Court notes that it does not accept ¶ 10 as irrefutable proof that Meitran is entitled to the "good faith compliance defense" available in the EFTA. Rather, the Court accepts the statement for what it is worth—that Meitran had a general policy of replacing fee notices when installers noticed that they were missing.

Next, Plaintiff moves to strike ¶ 11 of the affidavit, which reads "I have, or an employee of Meitran has, replaced the notice that was placed on the face of the Subject ATM, including prior to November 1, 2010." Plaintiff argues that this paragraph is not made based on facts personally known to Boyd, since it asserts that *either* he or an employee "has performed a certain act." (Pl. Mot. to Strike at 3). Among other things, Plaintiff's argument assumes that the fee notice was replaced only once prior to November 1, 2010—nowhere in the affidavit does Boyd so state.

Third, Plaintiff takes issue with ¶ 14 of the affidavit because it is "irrelevant" and "immaterial." Plaintiff offers no explanation why the inclusion of ¶ 14 would be prejudicial to him in any way. The Court declines to strike paragraph 14 on the grounds articulated by Plaintiff.[5] *ABN AMRO, Inc.,* 2007 WL 845046, at *3.

Last, Plaintiff moves to strike ¶ 15, which states that "[i]f no fee notice was on the Subject ATM on November 1, 2010 then it was removed between April 29, 2009 and November 1, 2010 by someone other than Meitran." Plaintiff argues that Boyd's statement that "someone other than Meitran" must have removed the notice is improper conjecture or speculation. The Court recognizes that Boyd cannot possibly know for a certainty that if no fee notice was on the machine on November 1, 2010, then it was "removed * * * by someone other than Meirtran." For instance, the notice could have fallen off on its own accord, see *Boecherer v. Burling Bank*, 2009 WL 4544695, at *5-7 (N.D. Ill. Dec. 1, 2009), or been removed by a rogue employee. The Court will consider Boyd's statement, but only for what it is worth.

Plaintiff also moves to strike Defendant's third and fourth affirmative defenses. Rule 12(f) states that the Court "may strike from a pleading an insufficient defense." See also *Renalds v. S.R.G. Restaurant Group*, 119 F. Supp. 2d 800, 801-803 (N.D. Ill. 2000). Courts in this district have "followed a three-part test in examining affirmative defenses subject to a motion to strike: (1) the matter must be properly pleaded as an affirmative defense; (2) the matter must be adequately pleaded under the requirements of Federal Rules of Civil Procedure 8 and 9; and (3) the matter must withstand a Rule 12(b)(6) challenge-in other words, if it is impossible for defendants to prove a set of facts in support of the affirmative defense that would defeat the

---

[5] Paragraph 14 reads as follows: "As a matter of fact, as of April 29, 2009, there was a notice below the money tray on the ATM as well as a separate notice on the top of the Subject ATM that specifically stated that Bridgeview Bank customers would not [be] charged a fee for using the Subject ATM."

9

complaint, the matter must be stricken as legally insufficient." *Id*. at 802-803 (citing *Heller Fin., Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1294 (7th Cir. 1989)).

Defendant's third affirmative defense alleges that because Plaintiff was given an on-screen notice that gave him the opportunity to cancel the transaction if he did not want to pay the fee, Plaintiff's claim is barred by lack of damages. If Defendant can prove up this defense, it may avoid the payment of actual damages in this case. See *Stilz v. Standard Bank and Trust Company*, 2010 WL 5158108, at *2-4 (N.D. Ill. Dec. 14, 2010). The Court declines to strike this defense. Of course, the EFTA provides for both actual and statutory damages, see § 1693m(a), and Defendant cites no cases that show that its third defense would have any bearing on Plaintiff's ability to recover statutory damages.

Finally, the fourth affirmative defense alleges that "Plaintiff has filed at least three other lawsuits in the past year alleging the same facts as those at issue in this case" and accordingly Plaintiff's claim was brought in "bad faith." Ans. at ¶¶ 29-30. Accordingly, Defendant argues that it is entitled to reasonable attorney's fees pursuant to 15 U.S.C. § 1693m(f). *Id*. Section 1693m(f) provides that "[o]n a finding by the court that an unsuccessful action under this section was brought in bad faith or for purposes of harassment, the court shall award to the defendant attorney's fees reasonable in relation to the work expended and costs." Were Defendant to prove that Plaintiff did in fact bring his claim in "bad faith," such a finding by the Court would not be sufficient to "defeat the complaint" in its entirety and compel entry of judgment in Defendant's favor. *Renalds*, 119 F. Supp. 2d at 803; see also *Convergence Aviation, Ltd. v. United Technologies Corp.*, 2011 WL 1337099, at *1 (N.D. Ill. April 7, 2011) ("An affirmative defense is one that raises new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true.") (internal quotation and citation omitted).

Should Defendants win this lawsuit, they may move for attorneys fees under 15 U.S.C. § 1693m(f). However, the fourth asserted "defense" technically is not a proper affirmative defense because, if proven, it would not defeat all or any part of the complaint. Accordingly, the Court strikes it from the pleading. Nevertheless, the errant pleading did serve the purpose of placing Plaintiff on notice of Defendants' "bad faith" contention and potential request for fees. Cf. *Bartashnik v. Bridgeview Bankcorp, Inc.*, 2005 WL 3470315, at *5 (N.D. Ill. Dec. 15, 2005) (allowing affirmative defense based on § 1693m(f) to stand because it "provides adequate notice to plaintiff that defendant claims she acted in bad faith by filing this action").

## IV.    Analysis

Under the relevant portion of the EFTA, an ATM operator must provide notice to a user of fees charged for use of the machine. 15 U.S.C. § 1693b(d)(3). The relevant portion of that provision provides as follows:

> (3) Fee disclosures at automated teller machines
>
> > (A) In general
> >
> > The regulations prescribed under paragraph (1) shall require any automated teller machine operator who imposes a fee on any consumer for providing host transfer services to such consumer to provide notice in accordance with subparagraph (B) to the consumer (at the time the service is provided) of--
> >
> > > (i) the fact that a fee is imposed by such operator for providing the service; and
> > >
> > > (ii) the amount of any such fee.
> >
> > (B) Notice requirements
> >
> > > (i) On the machine
> > >
> > > The notice required under clause (i) of subparagraph (A) with respect to any fee described in such subparagraph shall be posted in a prominent and conspicuous location on or at the automated

teller machine at which the electronic fund transfer is initiated by the consumer.

(ii) On the screen

The notice required under clauses (i) and (ii) of subparagraph (A) with respect to any fee described in such subparagraph shall appear on the screen of the automated teller machine, or on a paper notice issued from such machine, after the transaction is initiated and before the consumer is irrevocably committed to completing the transaction, except that during the period beginning on November 12, 1999, and ending on December 31, 2004, this clause shall not apply to any automated teller machine that lacks the technical capability to disclose the notice on the screen or to issue a paper notice after the transaction is initiated and before the consumer is irrevocably committed to completing the transaction.

(C) Prohibition on fees not properly disclosed and explicitly assumed by consumer

No fee may be imposed by any automated teller machine operator in connection with any electronic fund transfer initiated by a consumer for which a notice is required under subparagraph (A), unless--

(i) the consumer receives such notice in accordance with subparagraph (B); and

(ii) the consumer elects to continue in the manner necessary to effect the transaction after receiving such notice.

The Board of Governors of the Federal Reserve System issued Regulation E to implement the EFTA. 12 C.F.R. § 205.1; see also *Boecherer*, 2009 WL 4544695, at *4-5. As to notice of fees, Regulation E states that:

(c) Notice requirement. * * * [A]n automated teller machine operator must comply with the following:

(1) On the machine. Post in a prominent and conspicuous location on or at the automated teller machine a notice that:

(i) A fee will be imposed for providing electronic fund transfer services or for a balance inquiry; * * *

12 C.F.R. § 205.16. Thus, both the statute and the regulation require the posting on or near the ATM machine of a notice that a fee will be imposed.[6] However, neither sets forth any specific requirements regarding the size, features, or other attributes of the notice. Failure to comply with the notice requirement can result in civil liability for damages. 15 U.S.C. § 1693m(a).

The EFTA, however, contains a provision which states that:

> If the notice required to be posted pursuant to section 1693b(d) (3(B)(i) of this title by an automated teller machine has been posted by such operator in compliance with such section and the notice is subsequently removed, damaged, or altered by any person other than the operator of the automated teller machine, the operator shall have no liability under this section for failure to comply with section 1693b(3)(B)(i).

15 U.S.C. § 1693h(d). In addition, a bank may avoid liability "if the person shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1693m.

---

[6] Defendants argue (for the first time in their reply) that because Bridgeview Bank is a state chartered bank, it is not subject to regulation by the Federal Reserve, and instead is regulated by the FDIC. (See Reply at 4-6). According to Defendants, the FDIC's interpretation of the EFTA and Regulation E requires banks to *either* post notice on the ATM or on the screen during the transaction. And because "upon information and belief, while using the ATM in question, Plaintiff was given the required on-screen notice" (Ans. at ¶ 23), Defendant has fully complied with the EFTA and judgment should be granted in Defendants' favor. There are at least four flaws with this argument, any one of which is fatal. First, because Defendant did not raise this argument in its opening brief, it is waived. *United States v. Adamson,* 441 F.3d 513, 521 n. 2 (7th Cir. 2006) (arguments raised for the first time in a reply brief are waived). Second, there are no facts in the pleadings (either in the complaint, in the answer, or in the Boyd affidavit) that are sufficient to show that Bridgeview Bank is a state-chartered bank and is therefore not subject to regulation by the Federal Reserve, and the Court cannot assume as much. Third, the Court is perplexed as to why Defendants would rely on the fact that the FDIC (and not the Federal Reserve) regulates Bridgeview Bank as grounds for dismissal of the complaint when Defendants have consistently asserted that Bridgeview Bank neither owns nor operates the subject ATM, and is not a proper party in this lawsuit at all. And fourth, in any event, the FDIC—since June 2009—has required two notices: one on the screen and one on the ATM machine. See *Dragotta v. West View Sav. Bank*, 395 Fed. Appx. 828, *2 (3d Cir. 2010) (reversing district court dismissal of EFTA claim in part because of perceived difference between FDIC and Federal Reserve enforcement of the EFTA); see also FDIC Letter of November 28, 2009, clarifying that "Notices must be posted *both* (1) in a prominent and conspicuous location on or at the automated teller machine, and (2) on the screen or on paper before the consumer is committed to paying a fee." Available at: http://www.fdic.gov/news/news/financial/2009/fil09066.html (emphasis added).

Defendants move for judgment on the pleadings on the ground that each of these two provisions provides them protection from liability. First, Defendants argue that they are protected by the safe harbor in § 1693h(d) because the Boyd Affidavit establishes that Meitran most recently posted the required notice in "early 2009" and confirmed that it was still posted on April 29, 2009. Boyd surmises that "[i]f no fee notice was on the Subject ATM on November 1, 2010 then it was removed between April 29, 2009 and November 1, 2010 by someone other than Meitran." (Boyd Aff. at ¶ 15).

The Court concludes that despite the assertions in the Boyd Affidavit, unresolved questions of fact preclude judgment in Defendants' favor at this time. "'The burden of proving justification or exemption under a special exception to the prohibitions of a statute generally rests on one who claims its benefits.'" *Meacham v. Knolls Atomic Power Laboratory*, 554 U.S. 84, 91 (2008) (quoting *F.T.C. v. Morton Salt Co.*, 334 U.S. 37, 44-45 (1948)). In order to take advantage of the exception in § 1693h(d), a defendant must prove two things: (1) that it posted the required notice, and (2) that the notice was "subsequently removed, damaged, or altered by any person other than the operator of the automated teller machine." While Defendants have arguably established the first element, there are unresolved questions with regard to the second. As the Court noted above, Boyd cannot possibly know that if no fee notice was on the machine on November 1, 2010, then it was "removed * * * by someone other than Meitran." As the Court noted above, discovery may reveal that a rogue Meitran employee removed the notice. Or, discovery may show that Defendant was responsible for the fact that the required notice fell off the machine (and thus not entitled to the safe harbor), due to inadequacies in the method that

Defendant used to attach the notice to the machine. See *Boecherer v. Burling Bank*, 2009 WL 4544695, at *5-7 (N.D. Ill. Dec. 1, 2009).[7]

Next, Defendants seek to avoid liability under § 1693m(c), which states that a "person may not be held liable [for the failure to post a fee notice] if the person shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."[8] Here, Defendants argue that the Boyd affidavit establishes that Meirtran had a "system in place to seek out, or replace, defaced or removed ATM fee disclosure notices." (Def. Mot. at 7); see Boyd Aff. at ¶ 7 ("[T]o the extent that any Meirtran employee were to see that any of its ATMs, including the Subject ATM, did not have a notice on it when it replenished that ATM, it would make notification of that fact, and have it immediately replaced.").

The Court concludes that unresolved factual questions preclude judgment in Defendants' favor on the § 1693m(c) "good faith" defense. First, as discussed above, discovery may show that Meirtran's failure to comply with the notice provisions of the EFTA was indeed "intentional" (as proved through conscious disregard of similar complaints or otherwise). Second, the Court cannot conclude that the "system" described by Boyd in a single sentence of

---

[7] Plaintiff and Defendants focus their argument regarding this statutory safe harbor on the issue of whether Defendants are required to provide "specific evidence" that a specific third party removed the notice, or whether the fact that Meirtran posted the notice and did not remove it is enough for Defendant to take advantage of the exception. Compare *Boecherer*, 2009 WL 4544695, at *6 (concluding that the "plain language" of § 1693h(d) shows that the "exception applies only when the ATM operator can affirmatively show that a specific third party removed the fee notice") with *Piontek v. Penn Sec. Bank and Trust Co.*, 2011 WL 1002194, at *4 (M.D. Pa. Jan. 31, 2011) (defendant entitled to summary judgment on § 1693h(d) grounds when defendant's employee testified in an affidavit that defendant posted EFTA notice signs and opined that they were later removed "by [an unknown] third party," and plaintiff failed "to produce some kind of evidence that would tend to show that external notice was never posted on the ATM, or if it was, that it was removed by defendant itself."). As Defendants have not established that they are entitled to judgment in their favor under either interpretation of the exception, the Court need not resolve this issue at this time.

[8] Plaintiff points out in his response that Defendants erroneously cite to § 1693m(d) instead of § 1693m(c) in their motion.

his affidavit is a system that is "reasonably adapted to avoid" errors in maintaining the notice required by the EFTA. In order to make such a determination, the Court would be required to consider facts outside of the pleadings and make determinations about the reasonableness of Meirtran's procedures based on a fuller elaboration of what they consist of—something that the Court may not do when ruling on a motion under Rule 12. For these reasons, Defendants' motion for judgment on the pleadings is respectfully denied.[9]

## V.   Plaintiff's Motion for Discovery

On January 14, 2011, Plaintiff filed a "motion for discovery" in which he asks the Court to "direct Defendants to commence discovery and allow Plaintiff to conduct full and complete discovery in support of his case." (Pl. Mot. [17] at 7-8). In his motion, Plaintiff lists a number of discovery requests that he intends to make on Defendants (it does not appear that Plaintiff actually ever served those requests on Defendants). Plaintiff attaches to his motion for discovery a single e-mail in which he asks counsel for Defendants whether they "have any objection to the plaintiff submitting discovery requests to the defendants" and asking to schedule a Rule 26(f) conference "if you like." Ex. B to Motion for Discovery. Counsel for Plaintiff asserts that he has received no response to this communication.

The Court denies Plaintiff's "motion for discovery" as moot. As the Court has denied Defendant's motion for judgment on the pleadings, Plaintiff will certainly be entitled to

---

[9] In their reply, Defendants argue that the complaint must be dismissed because "Plaintiff's response to the motion does not match up to the allegations in the * * * amended complaint." This argument is based on the fact that the pictures attached to Plaintiff's response to show a notice on the subject ATM. However, this notice is the "separate notice on the top of the Subject ATM that specifically stated that Bridgeview Bank customers would not [be] charged a fee for using the Subject ATM." (Ans. at ¶ 14). That notice was not independently EFTA compliant in that it did not inform consumers that "[a] fee will be imposed for providing electronic fund transfer services or for a balance inquiry." 12 C.F.R. § 205.16. There is no inconsistency. Contrary to Defendants' argument, Plaintiff never alleged that there was never *any* notice on the machine. Rather, Plaintiff alleges that "there was no Fee Notice posted on or near the Subject ATM that disclosed that users would be charged any fee for using the Subject ATM." (Cmplt. at ¶ 12).

commence discovery. However, the Court takes no position on any of the specific discovery requests that Plaintiff proposes to serve on Defendants. For the Court to do so would be premature; Defendants have not yet been served with Plaintiff's discovery and have had no opportunity to consider whether they object to any specific request or requests.[10]

**VI.     Conclusion**

For the foregoing reasons, Defendant Bridgeview Bank's motion for judgment on the pleadings [6] is respectfully denied. Plaintiff's motion to strike [13] is granted in part and denied in part and Plaintiff's motion for discovery [17] is denied.

Dated: June 13, 2011

Robert M. Dow, Jr.
United States District Judge

---

[10] The Court notes parenthetically that a pending motion to dismiss does not automatically stay any aspect of a case, including as to discovery. See, *e.g.*, *Tamburo v. Dworkin*, 2010 WL 4867346, at *2 (N.D. Ill. Nov. 17, 2010).