**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HANK DRAGER, individually and on behalf of all others similarly situated, ) ) | |
| Plaintiff, ) ) | Case No. 1:10-cv-7585 |
| v. ) ) | Judge Robert M. Dow, Jr. |
| BRIDGEVIEW BANK and MEIRTRAN, INC., ) ) ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are cross motions for summary judgment filed by Defendants Bridgeview Bank and Meirtran, Inc. [74] and by Plaintiff Hank Drager [81]. For the following reasons, the Court grants Defendants' motion for summary judgment [74] and denies as moot Plaintiff Drager's motion [81].

**I.     Background[1]**

In his one-count amended complaint [10], Plaintiff Hank Drager alleges a violation of the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1963 *et seq.* and Regulation E, 12 C.F.R.

---

[1] Both parties include numerous legal conclusions in their Local Rule 56.1 statements. Those legal conclusions will be ignored in piecing together the facts of this case. See *Malec v. Sanford,* 191 F.R.D. 581, 583 (N.D. Ill. 2000) (where a party offers a legal conclusion as a statement of fact, a court should not consider that statement); see also *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008) ("It is inappropriate to make legal arguments in a Rule 56.1 statement of facts."); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 465 (7th Cir. 2010) (confirming that courts need not "accept as true legal conclusions couched as a factual allegation") (internal quotations omitted). Furthermore, several of Plaintiff's denials were made without citation to specific evidentiary materials justifying the denial—in other words, Plaintiff objected to a statement of fact, but did so without citing to any evidence to refute the fact. Such denials are improper and insufficient to rebut a movant's factual allegations. See *Madonia v. BP Prods. N. Am.*, 2012 WL 13519, at *1 (N.D. Ill. Jan. 4, 2012) ("Such 'objections,' as Plaintiff styles them, with no evidentiary support are not sufficient to defeat summary judgment; rather, a nonmovant must support each denial with specific citations to the record or to supporting materials or affidavits that support their denial."); see also *McGuire v. UPS,* 152 F.3d 673, 675 (7th Cir. 1998) ("An answer that does not deny the allegations in the numbered paragraphs with citations to supporting evidence in the record constitutes an admission.") (internal citations omitted).

§ 205.1 *et seq.* On November 1, 2010, Plaintiff used an automated teller machine ("ATM") located at 4753 N. Broadway Avenue, in Chicago to withdraw $20 from his bank account. The ATM charged a $3.00 fee during the transaction, which was paid to Defendant Bridgeview Bank ("Bridgeview"). At the time of Plaintiff's transaction on November 1, the subject ATM did not display a fee notice which advised users that they would be charged a fee for using the ATM.[2] However, there was a notice at the top of the machine that read "Bridgeview Bank Customers Use This ATM For Free." Furthermore, Plaintiff could not complete the transaction at the subject ATM unless he was presented with an on-screen notice telling him about the $3.00 transaction fee and then agreed to accept the $3.00 fee. According to his deposition testimony, Plaintiff does not remember seeing the on-screen notice, but he nonetheless completed the transaction, received his $20.00, and paid the $3.00 fee. Plaintiff also testified that he did not see a notice on the subject ATM sometime prior to November 1, 2010, but he could not remember when.[3] Plaintiff brings this action on behalf of himself and "all persons who were charged a transaction fee for the use of" the subject ATM.

---

[2] There were three other ATMs inside at the same location as the subject ATM (and one outside), and the evidence presented establishes that there were fee notice stickers on these ATMs on or around November 1, 2010.

[3] In Plaintiff's deposition, he stayed that he could not remember the other date that he visited Bridgeview Bank and noticed a fee notice sticker missing from the subject ATM. He said it could have been in August, September, or even after October 16, 2010. In his "certification," prepared after his deposition and in response to Defendants' summary judgment motion, he stated that he believed it was in August or September. To the extent that a party's statements in an affidavit contradict his deposition testimony, the Court will not consider the affidavit in ruling on the summary judgment motions. See *Buckner v. Sam's Club, Inc.,* 75 F.3d 290, 292 (7th Cir. 1996) ("As a general rule, the law of this circuit does not permit a party to create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony"); see also *Patterson v. Chicago Ass'n for Retarded Citizens,* 150 F.3d 719, 720 (7th Cir. 1998). Plaintiff's post-deposition statement (his certification), claiming that he first observed a notice missing in August or September, despite his prior deposition testimony that he could have observed the notice after the middle of October 2010, is precisely the type of self-serving affidavit that the case law cited above forbids. See *Slowiak v. Land O'Lakes, Inc.,* 987 F.2d 1293, 1295 (7th Cir. 1993) (finding that "[s]elf-serving affidavits without factual support in the record will not defeat a motion for

Defendant Meirtran ("Meirtran") was the owner and operator of the subject ATM. Meirtran installed the ATM and repairs the ATM if it breaks. Meirtran pays $3.00/sticker for fee notice stickers informing consumers that a transaction fee will be imposed at its ATM. These stickers have strong adhesive on the back. If Meirtran does not "service" the ATM—meaning supply the machine with cash—then its employees inspect its ATMs twice a year to ensure that fee notice stickers are in place. If Meirtran does supply the cash for the machines, then its employees inspect its ATMs anywhere from weekly to monthly, depending on how frequently a machine needs to be replenished with cash. Meirtran also expects the entity which supplies the ATMs with cash (either on a weekly or monthly basis) to inspect the machines for the fee notice stickers. Meirtran also had a one-page written policy on compliance with the EFTA. On April 29, 2009, Meirtran took a picture of the subject ATM, which showed the notice below the tray where money is removed.

Bridgeview supplied the weekly cash inventory for withdrawal from the subject ATM during the relevant time period. While supplying the cash inventory, Bridgeview employees also visually checked the ATMs to ensure that fee notice stickers were present. According to the Bridgeview bank teller who typically filled the subject ATM with its cash inventory, the fee notice sticker also was on the ATM on October 16, 2010, just two weeks prior to Plaintiff's withdrawal. Bridgeview does not maintain or program the ATM; rather, if Bridgeview noticed a problem with the ATM, or if a customer informed Bridgeview of a problem, then Bridgeview would call Meirtran to inspect and repair the ATM.

---

summary judgment"). To the extent that Plaintiff's affidavit conflicts with his deposition testimony, his deposition testimony will be accepted.

Defendants also have provided evidence that if someone noticed that the ATM did not have a fee sticker, the "immediate response" would be to put a new sticker on and take a picture of the ATM with the new sticker.[4] Plaintiff has not provided any evidence that Defendants knew the fee sticker was missing and failed to post a new fee sticker on the ATM. Defendants' investigation revealed evidence that Defendants' current employees did not remove the fee notice sticker, and Plaintiff has not presented any evidence to the contrary. Meirtran admitted to knowledge of instances of alleged vandalisms at its other ATM machines. Plaintiff suggests that "former rogue employees" could have removed the fee sticker or, perhaps more plausibly, the sticker could have fallen off of the ATM. On November 26, 2010, Meirtran placed a new fee notice sticker on the subject ATM, after being informed that the machine did not have a sticker.

## II.    Summary Judgment Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). On cross-motions for summary judgment, the Court construes all facts and inferences "in favor of the party against whom the motion under consideration is made." *In re. United Air Lines, Inc.,* 453 F.3d 463, 468 (7th Cir. 2006) (quoting *Kort v. Diversified Collection Servs., Inc.,* 394 F.3d 530, 536 (7th Cir. 2005)); see also *Gross v. PPG Industries, Inc.*, 636 F.3d 884, 888 (7th Cir. 2011); *Foley v. City of Lafayette, Ind.*, 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted).

---

[4] If a Bridgeview employee, rather than a Meirtran employee, noticed that the sticker was missing, it would alert Meirtran, as Meirtran was responsible for replacing the stickers.

4

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the opposing] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252.

### III. Analysis

Under the relevant portion of the EFTA, an ATM operator must provide notice to a user of fees charged for use of the machine. 15 U.S.C. § 1693b(d)(3). The relevant portion of that provision provides as follows:

> (3) Fee disclosures at automated teller machines
>
>> (A) In general
>>
>> The regulations prescribed under paragraph (1) shall require any automated teller machine operator who imposes a fee on any consumer for providing host transfer services to such consumer to provide notice in accordance with subparagraph (B) to the consumer (at the time the service is provided) of--
>>
>>> (i) the fact that a fee is imposed by such operator for providing the service; and
>>>
>>> (ii) the amount of any such fee.
>>
>> (B) Notice requirements

5

> (i) On the machine
>
> The notice required under clause (i) of subparagraph (A) with respect to any fee described in such subparagraph shall be posted in a prominent and conspicuous location on or at the automated teller machine at which the electronic fund transfer is initiated by the consumer.
>
> (ii) On the screen
>
> The notice required under clauses (i) and (ii) of subparagraph (A) with respect to any fee described in such subparagraph shall appear on the screen of the automated teller machine, or on a paper notice issued from such machine, after the transaction is initiated and before the consumer is irrevocably committed to completing the transaction, except that during the period beginning on November 12, 1999, and ending on December 31, 2004, this clause shall not apply to any automated teller machine that lacks the technical capability to disclose the notice on the screen or to issue a paper notice after the transaction is initiated and before the consumer is irrevocably committed to completing the transaction.
>
> (C) Prohibition on fees not properly disclosed and explicitly assumed by consumer
>
> No fee may be imposed by any automated teller machine operator in connection with any electronic fund transfer initiated by a consumer for which a notice is required under subparagraph (A), unless--
>
> > (i) the consumer receives such notice in accordance with subparagraph (B); and
> >
> > (ii) the consumer elects to continue in the manner necessary to effect the transaction after receiving such notice.

The Board of Governors of the Federal Reserve System issued Regulation E to implement the EFTA. 12 C.F.R. § 205.1; see also *Boecherer v. Burling Bank*, 2009 WL 4544695, at *4-5 (N.D. Ill. Dec. 1, 2009). As to notice of fees, Regulation E states that:

> (c) Notice requirement. * * * [A]n automated teller machine operator must comply with the following:
>
> > (1) On the machine. Post in a prominent and conspicuous location on or at the automated teller machine a notice that:

           (i) A fee will be imposed for providing electronic fund transfer services or for a balance inquiry; * * *

12 C.F.R. § 205.16. Thus, both the statute and the regulation require the posting on or near the ATM machine of a notice that a fee will be imposed. However, neither sets forth any specific requirements regarding the size, features, or other attributes of the notice. Failure to comply with the notice requirement can result in civil liability for damages. 15 U.S.C. § 1693m(a).

> The EFTA, however, contains a provision which states that:
>
> If the notice required to be posted pursuant to section 1693b(d) (3(B)(i) of this title by an automated teller machine has been posted by such operator in compliance with such section and the notice is subsequently removed, damaged, or altered by any person other than the operator of the automated teller machine, the operator shall have no liability under this section for failure to comply with section 1693b(3)(B)(i).

15 U.S.C. § 1693h(d). In addition, a bank may avoid liability "if the person shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1693m.

      Defendants move for summary judgment, arguing that these two provisions protect them from liability. First, Defendants argue that they are protected by the safe harbor in § 1693h(d). In order to take advantage of the exception in § 1693h(d), a defendant must prove two things: (1) that it posted the required notice, and (2) that the notice was "subsequently removed, damaged, or altered by any person other than the operator of the automated teller machine."[5] "'The burden of proving justification or exemption under a special exception to the prohibitions of a statute generally rests on one who claims its benefits.'" *Meacham v. Knolls Atomic Power*

---

[5] Plaintiff's argument that 1693h(d) applies only to "financial institutions" and not "operators," and thus Meirtran does not come within the exception, is contrary to the plain language of the statute and not persuasive.

*Laboratory*, 554 U.S. 84, 91 (2008) (quoting *F.T.C. v. Morton Salt Co.*, 334 U.S. 37, 44-45 (1948)).

Defendants have established both elements, entitling them to take advantage of the safe harbor provision. Defendants have presented uncontroverted evidence that Meirtran posted a proper fee notice in 2009 and that a Bridgeview employee observed the notice on the machine in October 2010, just weeks before the incident of which Plaintiff complains.[6] For the § 1693h defense, that leaves only the question of how the fee notice came to be missing from the machine. To this end, Defendants have presented uncontroverted evidence that it was removed by someone other than an employee of Bridgeview Bank or Meirtran. Each defendant conducted an internal investigation to discern whether any of its employees removed the sticker. The uncontroverted results of their investigations revealed that their employees did not remove the sticker. Discovery did not reveal that "a rogue [ ] employee removed the notice"—one of the Court's concerns in denying Defendants' previous motion for judgment on the pleadings—or that an employee removed an old sticker and forgot to apply a new sticker. To the extent that Plaintiff argues that Defendants must present evidence of the actual person who removed the sticker—rather than providing evidence that the sticker was not removed by one of their employees—the Court declines to endorse that interpretation of § 1693h. See also *In re Cardtronics ATM Fee Notice Litigation*, --- F. Supp. 2d ----, 2012 WL 1674254, at *7 (S.D. Cal. May 11, 2012) (granting summary judgment for defendants when plaintiffs failed to rebut evidence that defendants posted the notice and did not remove the notice and stating that "courts applying the 'safe harbor' defense do not demand that ATM operators prove the specific

---

[6] The Court would reach the same conclusion if the only evidence presented was that the proper fee notice was posted in April 2009, instead of that evidence plus evidence that a Bridgeview employee observed the sticker as late as October 2010.

circumstances of the removal of the notice; rather they allow the ATM operator to prove that it did not remove the notice itself, leaving a sufficiently reasonable inference that someone else must have removed it"); *Reyes v. Cole Taylor Bank*, 2011 WL 3704705, at *3 (N.D. Ill. Aug. 22, 2011) (evidence that employees did not remove fee notice sticker was sufficient to satisfy § 1693h burden on summary judgment); *Piontek v. Penn. Sec. Bank & Trust Co.,* 2011 WL 1002194 (M.D. Pa. Jan 13, 2011) (affidavit of security professional concluding that third party must have removed sticker sufficient for summary judgment). Through the undisputed evidence that the notice was affixed to the ATM and was not removed by Defendants' employees, Defendants have established that the fee notice was removed by a third-party.

Plaintiff's other theory appears to be that the fee notice fell off.[7] Plaintiff uses this assumption as a jumping off point to explain how Defendants' procedures for affixing and checking up on the notices were inadequate, presumably in reference to Defendants' "good faith" defense under § 1693m. But discovery did not reveal that Defendant was responsible for the fact that the required notice fell off the machine (and thus not entitled to the safe harbor) due to inadequacies in the method that Defendant used to attach the notice to the machine. See *Boecherer v. Burling Bank*, 2009 WL 4544695, at *5-7 (N.D. Ill. Dec. 1, 2009). Rather, Defendants presented uncontroverted evidence that the sticker was very sticky and that none of Defendants' employees had ever witnessed one fall off before. Discovery also revealed that a Bridgeview employee checked to make sure that the fee notice was posted each time she supplied the ATM with its cash inventory.

Thus, at the end of the day, Defendants have offered actual evidence that the sticker was removed by someone other than Defendants' employees, while Plaintiff has offered only

---

[7] Although Plaintiff's own interrogatory answers assert that the sticker was removed, rather than that it fell off, in briefing the summary judgment motions, Plaintiff contends that the sticker might have fallen off due to improper posting or normal wear and tear.

speculation that the sticker fell off. The Court concludes that Defendants' investigation—which revealed that the notice was not removed by an employee of either Bridgeview or Meirtran, that the notice was very sticky, and that no employee of either defendant had ever observed a fee notice sticker fall off—satisfies the statutory requirement that the sticker be removed by "any person other than the operator of the automated teller machine" and entitles Defendant to take advantage of the safe harbor provision.

Defendants also seek to avoid liability under § 1693m(c), which states that a "person may not be held liable [for the failure to post a fee notice] if the person shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." Although the Court need not address Defendants' second affirmative defense—having found that Defendants have satisfied their burden under § 1693h(d)—the Court briefly addresses whether the evidence supports such a defense. Defendants have presented evidence that Meirtran had a system in place to monitor and replace defaced or removed ATM fee disclosure notices. At a minimum, Meirtran employees would check Meirtran ATMs twice per year—that is, if Meirtran did not provide the cash inventory for a particular ATM, they still would check the ATMs during the year to make sure that the sticker was in place. If Meirtran did provide the cash inventory for one of its ATMs, then it would check for the notice anywhere from weekly to monthly, depending on how often a particular machine needed to be supplied. In addition to checking the ATMs, Meirtran had a one-page written policy on compliance with the EFTA and Meirtran expected the entity which supplied the ATMs with cash (either on a weekly or monthly basis) to inspect the machines for the fee notice sticker. Bridgeview employees testified that they did indeed check the ATMs for the fee notice each time that they refilled the machines.

10

Based on these facts, the record reveals that either a Bridgeview or Meirtran employee was checking for the fee notice sticker at least once per month and typically more often. Discovery further revealed that when Meirtran has notice that the fee sticker is missing from an ATM—either through the observations of its own employees or through notice from a bank—Meirtran promptly replaces the missing sticker with a new one. This "system" qualifies as "reasonably adapted to avoid" errors in maintaining the notice required by the EFTA. Furthermore, there simply is no evidence that Defendants' non-compliance in the fall of 2010 was "intentional." Plaintiff admitted during his deposition that he did not have any evidence to suggest that Defendants did not put a sticker on the machine. Thus, it appears that the lack of the fee notice sticker in early November 2010 was an unintentional infraction notwithstanding procedures reasonably geared toward making sure ATMs have notice stickers. While Defendants' maintenance procedures certainly are not designed to be flawless—nor could they be absent a 24-hour guard at each ATM machine—nothing in the record even hints at an intentional violation or a lack of good faith.

### IV. Conclusion

For these reasons, the Court grants Defendants motion for summary judgment [74], finding that Defendants are entitled to the protections afforded by 15 U.S.C. § 1693h(d) and § 1693m. Because Defendants have satisfied their burden on these affirmative defenses, the Court denies as moot Plaintiff's motion for summary judgment [81]. Judgment will be entered in favor of Defendants and against Plaintiff.

Dated: September 17, 2012

_____
Robert M. Dow, Jr.
United States District Judge